UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | | |
|---|---|---|
| MOSS MATTHEWS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 12-265-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN COLVIN, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Plaintiff, Moss Matthews, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security (Commissioner) denying Matthews's application for disability insurance benefits (DIB). The Court, having reviewed the record and for the reasons set forth herein, will deny Matthews's Motion for Summary Judgment [R. 12] and grant the Commissioner's [R. 14].

I

Matthews filed his application for DIB on February 9, 2009. [Transcript (Tr.) 143]. He alleges a disability beginning on May 31, 2008, due to problems with his prosthetic leg and chronic pain. [Tr. 20, 143]. Matthews's application was denied initially and upon reconsideration [Tr. 98-99]. Subsequently, at Matthews's request, an administrative hearing was conducted before Administrative Law Judge Paul E. Yerian (ALJ) on February 14, 2011. [Tr. 35-80]. During the hearing, the ALJ heard testimony from Matthews and vocational expert (VE) Vanessa Harris. [*Id.*] Matthews, who was thirty three years old as of the alleged onset date, has a tenth grade education. [Tr. 29, 143, 161, and 165]. Matthews has past relevant work performing

janitorial duties and brush clearance, and though the VE testified that he could no longer perform that work, he found that there are jobs that exist in significant numbers in the national economy that Matthews could perform, and the ALJ accepted that testimony. [Tr. 28-30.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

In this case, at Step 1, the ALJ found that Matthews has not engaged in substantial gainful activity since May 31, 2008, the alleged onset date. [Tr. 22.] At Step 2, the ALJ found that Matthews has the following severe impairments: "status post remote below the knee

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

amputation on the left; cervical, dorsal, and lumbar myositis; degenerative disc disease of the lumbar spine; bilateral shoulder bursitis; bilateral sacroiliitis; occipital neuralgia; hepatitis C." [*Id.*] At Step 3, the ALJ found that Matthews's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. [Tr. 23]. At Step 4, the ALJ determined that Matthews is unable to perform any past relevant work. [Tr. 28]. However, at Step 5 the ALJ relied on the testimony of the VE to find that, based on Matthews's residual functional capacity, there are jobs that exist in significant numbers in the national economy that Matthews could perform. [Tr. 29-30]. Accordingly, on March 11, 2011, the ALJ issued an unfavorable decision, finding that Matthews was not disabled, and therefore, ineligible for DIB. [Tr. 30]. The Appeals Council declined to review the ALJ's decision on August 14, 2012 [Tr. 14] and Matthews now seeks judicial review in this Court.

II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981),

*cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *Mullen*, 800 F.2d at 545.

Matthews's first argument on appeal focuses on the ALJ's decision regarding the opinion of Matthews's treating physician, Dr. Gary Shearer. Specifically, Matthews argues that appropriate weight was not given to this opinion by the ALJ.

The Regulations provide a framework for the evaluation of treating source opinion evidence:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(c)(2). Therefore, a treating physician's opinion is given controlling weight, but only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. §

4

404.1527(d)(2)).[2] If the treating source's opinion is not given controlling weight then the ALJ is required to consider the following factors in deciding exactly how much weight is to be given to the opinion: length of the treatment relationship as well as the frequency of examinations, the nature and extent of the treatment relationship, the supportability of the medical opinion, the consistency of the opinion and the degree of specialization of the treating source. 20 C.F.R. § 404.1527(c)(2)(i-ii), (c)(3-6); *Turner v. Comm'r of Soc. Sec.*, 267 F. App'x 456, 460 (6th Cir. 2008); *Wilson,* 378 F.3d at 544. The ALJ is required to give "good reasons" for not giving weight to opinions from the treating physician in a disability determination. 20 C.F.R. § 404.1527(c)(2). The purpose of this requirement is to "let claimants understand the disposition of their cases," to "ensure[] that the ALJ applies the treating physician rule," and to "permit[] meaningful review of the ALJ's application of the rule." *Wilson,* 378 F.3d at 544 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5; *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999); *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)); *see also Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 376 (6th Cir. 2013).

Dr. Shearer has been treating Matthews since 2007 for complications following amputation of the left knee, chronic neck and bilateral shoulder pain, and occipital neuralgia. [Tr. 220-288; 313-320; 392-422]. Dr. Shearer completed a questionnaire on September 17, 2010 to report his opinion of Matthews's residual functional capacity based on his evaluation. [Tr. 374-378]. According to Dr. Shearer, Matthews can only sit for thirty minutes without standing up, can only stand for ten minutes without sitting down or walking around, and can only walk one block without rest or severe pain. [Tr. 376]. Dr. Shearer states that Matthews can only stand/walk for less than two hours in an eight hour work day, and sit for about four hours during

---

[2] This cited provision is now located at 20 C.F.R. § 404.1527(c)(2).

that period. [*Id.*] Every thirty minutes Matthews needs to walk around for about five minutes, and he would require a cane to do so. [*Id.*] Dr. Shearer indicates that Matthews can never lift over ten pounds, and could only lift less than ten pounds rarely. [Tr. 377]. While Matthews could occasionally look down, turn his head, and look up, he could rarely hold his head in a static position, and could never twist, stoop, crouch, climb ladders, or climb stairs. [Tr. 377]. Further, Matthews has significant limitations with reaching, handling, and fingering. [Tr. 378]. Only 10% of the time can Matthews grasp, turn, twist objects, and engage in fine manipulations, while he can reach overhead less than 5% of the time. [*Id.*] Finally, Dr. Shearer notes that Matthews's symptoms constantly interfere with his attention and concentration such that he is incapable of tolerating even "low stress jobs." [Tr. 375]. According to his annotations on the RFC questionnaire, Dr. Shearer believes that Matthews is totally disabled. [Tr. 376].

The ALJ thoroughly documented these findings and provided a detailed survey of the previously discussed legal standards guiding his evaluation of this treating physician. [Tr. 27-28]. ALJ Yerian then concluded as follows:

> When evaluated under these guidelines, the conclusions of Dr. Shearer are given little weight. As outlined above, Dr. Shearer's treatment notes fail to document objective findings consistent with the extreme limitations he indicated in the questionnaire (Exhibits 1F, 6F, and 15F). His conclusions regarding the claimant's limitations are also inconsistent with the remainder of the objective medical evidence of record as well as the claimant's own allegations prior to the hearing and testimony during the hearing as discussed above.

[Tr. 28]. Matthews claims that this conclusion is too vague, lacks explanation, and is faulty. [R. 12 at 7-8]. Further, Matthews cites a number of objective medical findings which he says supports Dr. Shearer's limitations, including the presence of spasm, pressure ulcers, pain response to palpitation, positive straight leg test, and an MRI showing a herniated disc. [*Id.*]

6

However, Matthews overlooks the ALJ's prior references to this evidence and subsequent discussion that more clearly explains the reasons for this conclusion. ALJ Yerian specifically articulates the areas in which Dr. Shearer's opinions are either unsupported or contradicted by the record. First, the ALJ recognizes that record does contain an MRI from June 2010 revealing herniated discs at L4-5 and L5-S1. [Tr. 23, 380-81]. However, as noted by the ALJ, that MRI did not indicate nerve root compression or irritation or foraminal narrowing. [Tr. 23, 26, 28, 380-81]. Further, the record also contains an x-ray of the thoracic spine from August 2010, which was normal. [Tr. 23, 388]. Concerning the severe limitations Dr. Shearer documented for Matthews's hands, the ALJ noted that the record reveals no documented hand problems. [Tr. 26]. The Court's own review of the record has revealed a few fleeting references to decreased grip strength, but nothing that could support the nature of hand limitations recommended by Dr. Shearer. [Tr. 235, 417, 419, 378]. The ALJ also addressed the issue of stump complications, and found only one documented instance of stump infection, which was resolved quickly upon treatment. [Tr. 26]. Matthews has not cited, nor has the Court uncovered, additional documentation supporting further stump issues that were extensive or enduring. Further, taking Dr. Shearer's treatment notes together, the record reveals few significant changes in Matthews's condition from his initial visits in 2007 to the more recent evaluations in 2011. [Tr. 23, 222-288; 313-320; 392-422].

To be sure, the record does indicate that Matthews experiences pain and some limitations, which are supported in the record by documentation of, for example, spasm and pain as a response to palpation. However, the ALJ did not find that Matthews was without limitation, but that the record did not support that he was limited to the severe extent to which Dr. Shearer opined. [Tr. 28]. A primary reason for this conclusion is the nature and effectiveness of the

7

treatment that Dr. Shearer provided. [*Id.*] Month after month, Matthews visited Dr. Shearer, who treated him with pain medication and injections. There can be no doubt that this is a relatively conservative course of treatment, especially for someone with severity of limitations that Dr. Shearer ultimately found Matthews to have. However, the notes suggest that this conservative treatment was appropriate because it provided Matthews with significant relief. [Tr. 22]. From 2007 to 2008, Matthews reported that this treatment frequently provided him with 100 percent relief. [Tr. 222-83]. Over time, he experienced some variation in that amount, reporting that the treatment provided him 50 percent relief once in 2008, and that he more consistently experienced 40 to 60 percent relief in later visits. [Tr. 22, 26, 255, 313-29, 392-408]. Still, on nearly every treatment note, even in the more recent visits, Dr. Shearer notes that the conservative treatment regimen is helping Matthews, stating that it is providing him with "good relief" or that the interventions "improve patient's ADL." [*See e.g.*, 410-412, 22]. Perhaps the best evidence that this treatment was beneficial is that Matthews continued to return to receive it and Dr. Shearer continued to provide it. [Tr. 222-88; 313-320; 392-408]. The Court finds no evidence in the record that Dr. Shearer ever recommended more aggressive treatment, or that Matthews ever requested it. Thus, substantial evidence in the record supports the ALJ's finding that the nature and effectiveness of the treatment received by Matthews militates against the severe limitations found by Dr. Shearer.

The final reason relied upon by the ALJ in ascribing little weight to the findings of Dr. Shearer is the activities of daily living reported by Matthews. [Tr. 28]. As discussed, Dr. Shearer indicated that the treatment he provided helped Matthews improve his activities of daily living. [*See e.g.*, Tr. 410]. Further, the record reveals that Matthews is able to help care for his dog, prepare simple meals, take out the garbage, shop for basic grocery items, travel outside his

home daily, and bathe and dress himself. [Tr. 168-172; 193-199]. While these may seem like relatively small tasks, the Court agrees with the ALJ that even these activities of daily living are not consistent with the severe limitations proposed by Dr. Shearer.

ALJ Yerian gave little weight to the opinions of Dr. Shearer, despite his extensive treatment history with Matthews, because the limitations he described are not supported by objective evidence in the record and are inconsistent with other evidence in the record, including his own treatment notes. In reaching this conclusion, the ALJ cited to specific instances in the record, thoroughly discussed the nature and extent of treatment, and detailed the claimant's activities of daily living. The Court finds that these constitute good reasons for giving Dr. Shearer's opinion little weight, and, as discussed above, that this conclusion is supported by substantial evidence.

In reaching this conclusion, ALJ Yerian has not substituted his own medical judgment for that of a medical profession, as Matthews argues in his second assignment of error. It is true that an ALJ "may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009)(citing *Meece v. Barnhart,* 192 Fed.Appx. 456, 465 (6th Cir.2006)). However, as discussed, Dr. Shearer's opinion is not supported by substantial medical evidence of the record. Further, "[t]his is not a case like *Meece v. Barnhart,* 192 F. App'x 456, 465 (6th Cir.2006), where the ALJ discredited the claimant's headache pain because his doctors failed to prescribe specific headache medications. Rather, here, the ALJ merely compared Plaintiff's treatment history to the severity level of limitations assigned by [Dr. Shearer] and deemed them incongruent." *Harris v. Comm'r of Soc. Sec.,* 1:11 CV 1936, 2012 WL 3780401 at *15 (N.D. Ohio July 30, 2012). By virtue of the treating physician rule, this

determination is inherently within the province of the ALJ. *See* 20 C.F.R. § 404.1527(c)(2). Further, the regulations are clear that a claimant's residual functioning capacity is not a pure medical decision that must be made by a doctor, but an assessment that must be made by the ALJ based on the entire record. 20 C.F.R. § 404.1545(a); 20 C.F.R. § 404.1546(c); Social Security Ruling (SSR) 96-5p, 1996 WL 374183 (S.S.A.). As such, Matthews's second assignment of error is without merit.

Finally, Matthews devotes a few sentences to his third argument, that the ALJ improperly considered the lack of treatment as a basis for discounting Dr. Shearer's opinion. Matthews says that this is improper because poverty and lack of medical insurance is the reason that he could not seek further treatment. However, Matthews mischaracterizes the ALJ's discussion of his treatment. As previously stated, the ALJ's focus was on the fact that the conservative treatment was effective in helping relieve Matthews's pain. [Tr. 26-28]. This record does not reveal that Dr. Shearer recommended or Matthews ever sought more serious treatment that Matthews could not afford. As such, Matthews's poverty and lack of health insurance had no bearing on the ALJ's decision.

### III

As the Court finds that the decision of the ALJ is supported by substantial evidence and that the objections raised by Matthews are unavailing, it is hereby **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [R. 12] is **DENIED**;

(2) Defendant's Motion for Summary Judgment [R. 14] is **GRANTED**

(3) **JUDGMENT** in favor of the Defendant will be entered contemporaneously herewith.

This the 31st day of March, 2014.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge